# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Commonwealth of Virginia

v.

Aikido Cheblis Graves

November 7, 2013

Case Nos. CR. 10-3217-00, CR. 10-3217-02,
CR. 10-3217-03, CR. 12-4235-00, CR. 12-4235-02,
CR. 12-4235-03, CR. 12-4235-04

By Judge Craig D. Johnston

I write to announce my decision following the hearing on October 21, 2013.

### Summary

Having considered the evidence and argument, I find that Mr. Graves, the party alleging incapacity, has not met his burden of proving by the preponderance of the evidence that he is not competent to stand trial as to the captioned charges. He has not demonstrated under the statutory requirements as discussed in *Orndorff v. Commonwealth*, 271 Va. 486, 628 S.E.2d 344 (2006), that he lacks substantial capacity to understand the criminal proceedings against him or that he is incapable of assisting counsel in his defense.

### Summary of Bases for Decision

The first and principal basis for my decision is that I find the testimony and the opinions of Dr. Hoffman, who opined that Mr. Graves is not incompetent, to be more credible and more persuasive than that of Dr. Peterson, who opined that he is not competent. This basis is independent of

the other two and sufficient to find that Mr. Graves has not met his burden of proof that he is unable to assist counsel in his defense.

A second, independent basis is my conclusion that, whatever issues Mr. Graves may have with his counsel and whatever their cause, he has the capacity to represent himself and both the desire and a constitutional right to do so.

A third, independent basis results from my conclusion that any undertaking to make a determination that Mr. Graves is "incapable of assisting counsel in his defense," based upon behavior arising from sincerely held religious beliefs, must be carefully scrutinized, and is inappropriate in this case.

### Procedural Background

In Case No. CR 10-3217, Mr. Graves has in the past represented himself, but consented to the appointment of counsel, who filed the original competency motion. Following this original request and following an evaluation by Dr. Peterson and a hearing, I found that Mr. Graves had not met his burden of proof that he was not competent to stand trial. Part of the basis for my so finding was that, while Dr. Peterson opined that he was unable to assist counsel, she could point to no particular mental health condition which rendered him incompetent, but rather based her decision upon his religious beliefs and his distrust of the system and those in it.

Mr. Graves' counsel in Case No. CR 10-3217 filed motions to reconsider this ruling, citing the after-discovered report of Dr. King which, while it did not address or opine as to competency, contained opinions which might have been relevant to a competency determination. Mr. Graves' counsel in Case No. CR 12-4235 joined in this request and filed a separate Motion for Competency Evaluation and Hearing. As a result, I reopened the competency proceedings in Case No. CR 10-3217 and granted the request for a new evaluation. A new evaluation was performed by Dr. Hoffman, who filed a report. A hearing was held, which was in part a continuation of the prior proceedings, now reopened, and in part new proceedings. It was agreed that evidence received in the prior hearing would be in evidence in the new proceedings, including both testimony and exhibits. All three doctors testified at the second hearing. Following the hearing, I took the matter under advisement and report my decision herein.

The various "02, 03" etc. charges are failure to appear charges which appear to remain pending.

*Discussion*

## I. *Dr. Hoffman's Testimony and Conclusions*

Without detailing all of the reasons that I find Dr. Hoffman's testimony and opinions more persuasive, I will note some of them.

Dr. Hoffman performed the most recent evaluation.

All three doctors heard the testimony of the others. Dr. Hoffman testified last and was not persuaded by the opinion of Dr. Peterson that Mr. Graves lacked the ability to assist counsel.

Dr. King did not perform a competency evaluation, nor did he express an opinion as to competency. He did do testing, from which he concluded that Mr. Graves suffered from a disorder. Dr. Hoffman heard Dr. King's testimony and his opinion, and, while he did not disagree with Dr. King's opinion that Mr. Graves has this disorder, this did not change his opinion, nor persuade him that this disorder renders Mr. Graves unable to assist his counsel or otherwise incompetent.

Competency proceedings have as their central purpose and function to ensure that the constitutional and statutory rights of a defendant are met. The statutory right, which attempts to track the constitutional right, is that "No person shall, while he is insane or feebleminded, be tried for a criminal offense." Virginia Code § 19.2-167.

The words of the statute are somewhat old-fashioned, and the psychological parlance has changed, but the essence has not — persons can be too deficient in intellectual capacity or too psychotic or otherwise psychologically disturbed, to be able to defend themselves or to assist their counsel, and, in such cases, it is not fair to require them to go to trial in that condition.

No expert opined that Mr. Graves is "feebleminded," that is, that he is deficient in intellectual capacity, or that he lacked substantial capacity to understand the criminal proceedings against him. On the contrary, all opined that he is of average, and nearly above-average, intelligence and understood well the criminal proceedings against him.

No expert opined that Mr. Graves is "insane." In more modern parlance, no expert opined that he suffered from any psychosis such as paranoid schizophrenia. He has never been hospitalized for any mental or emotional condition nor diagnosed with any mental or emotional condition which would usually require hospitalization. In his many appearances before me, he has never said or done anything which would cause me to question his sanity. The many motions he has filed and the many he has argued before me support the conclusion that he is not insane, nor feebleminded, and fully understands the proceedings against him and the legal process.

That leaves the last question, which is the principal issue in this case, which is whether Mr. Graves is "unable" to assist his counsel. Ordinarily,

persons evaluated for competency and found unfit to stand trial are found unfit because they meet the "insane" test, and they are further "unable to assist counsel" because they are insane. Where not insane, they must establish that they are nonetheless "unable" to assist counsel. To be "unable" to do something is different from "to have difficulty" in doing something. While Mr. Graves may have some mental health difficulties, this is not unusual for criminal defendants, and, while these difficulties, together with his religious beliefs, discussed below, may render it difficult for him to deal with counsel, I conclude based upon Dr. Hoffman's opinion and the other evidence in the case that he has not met his burden of establishing that he is "unable" to assist counsel.

## II. *Right to Self-Representation*

A further, independent, consideration is the question of Mr. Graves' ability to represent himself. Dr. Hoffman is of the opinion that Mr. Graves has the capacity to represent himself. Exhibits 2 and 3, second to last paragraph. This is an opinion I conclude is correct. He is clearly competent, in the sense that he is not insane. All witnesses agreed that he fully understands the legal process and the proceedings against him, and he has amply demonstrated, in the many filings with the court and the many hearings at which he has appeared, both with and without counsel, that he has a clear understanding of the legal system and a clear ability to formulate and express his opinions and defenses, both orally and in writing. An otherwise competent person has a constitutional right to represent himself, a right Mr. Graves has asserted on a number of occasions. Indeed, he has filed a number of motions now pending, seeking to revert to self-representation, which I have deferred until these competency proceedings are concluded.

The defense focused little evidence or argument on this issue, with the great bulk going to difficulties in assisting counsel. To the extent there was such argument, it appears that it was that Mr. Graves is so preoccupied with his "Moor" defenses that he will not focus on defenses the law will recognize. I share a concern that Mr. Graves may not avail himself of all available defenses, and indeed I have urged him when representing himself in the past not to rely entirely on his Moor defenses, as this may lead him to ignore or short-change other defenses to his detriment. I nonetheless conclude, as more fully discussed in the next section, that an otherwise competent person may choose any defenses he wishes or no defenses. If he chooses to adopt a belief system with apparently bizarre beliefs, including beliefs in defenses the law does not recognize, that is his right as well.

To hold that Mr. Graves is incompetent, based on either an unwillingness or an inability to assist counsel, when he is competent to represent himself, and desires to do so, would appear to me to be a denial of his right to self-representation.

### III. *Religious Beliefs*

Another, independent basis for my conclusion that Mr. Graves has not met his burden of proof is that much of Mr. Graves' behavior, including his distrust of and unwillingness to cooperate with counsel, is as a result of his beliefs, which are in the nature of religious beliefs. This adds a "wild card" to the competency equation in that there is substantial question as to the Court's ability to conclude that Mr. Graves is not competent if religious beliefs are the basis for behavior which appears to be less than rational from others' perspectives.

Evidence from the many filings of Mr. Graves, some reviewed by the professionals, and the many motions he has argued before the court shows that Mr. Graves has a sincere belief that he is a "Moor," a member of an aboriginal, indigenous, sovereign group of persons who inhabited North American before the arrival of the European invaders, whose land and persons were illegally misappropriated by these invaders, and who are not subject to the laws of the Commonwealth or of the United States. His group has a "Temple," and a prophet of sorts, and subscribes to an extensive and (from their perspective) coherent belief system, and is in the nature of a religious group which outsiders might term a "cult." As Dr. King reports, Mr. Graves speaks of this belief system to all almost in the nature of an evangelist. See for example p. 4 and 5 of Dr. King's report, Exhibit 1 to hearing, "Although Mr. Graves seemed resigned to the fact that he was being perceived as delusional, he tried to explain why he was not delusional via providing education about indigenous people, Moors, constitutional law, and so forth."

Dr. King based his opinion that Mr. Graves had a disorder characterized by delusions at least in part upon his conclusion that his Moorish beliefs were delusional. On page 13, the first full paragraph, he reports doing independent research which showed that Mr. Graves' belief that he was an indigenous person protected by certain treaties, etc., had no basis in fact. Further, he stated that "Mr. Graves appears to be suffering from a Delusional Disorder, Persecutory Type based upon his detailed beliefs regarding his status as an indigenous person who does not have to adhere to Federal or state law .... " To be fair to Dr. King, he was not at the first competency hearing, at which I heard a great deal of evidence regarding the Moors as a kind of (from others' perspective) cult religious group. Many of Mr. Graves' written motions are full of references to this Moor doctrine, which appears bizarre. As Dr. Peterson noted in her testimony at the first hearing, after reading them she expected to find that Mr. Graves was severely disturbed and was pleasantly surprised to discover he was not. Her opinion that he is not competent, though couched in general terms, referred to his belief system as evidence of incompetency.

It is clear from the evidence that Mr. Graves' belief system is a highly developed, internally consistent belief system, developed by a "prophet" of

sorts many years ago, with a "temple," doctrine, and a sizable number of adherents. Most importantly for purposes of this case, Mr. Graves' beliefs are not delusion which sprang from his mind or from his psychological condition. They are beliefs of a group which he decided to join, or, perhaps, decided he was already a member of by reason of his historical status. Further, they are in the nature of religious beliefs. To others, the beliefs of Mr. Graves' group may appear to be illogical, bizarre, and not based upon historical fact. However, it is a very slippery slope to undertake to conclude that a person is "incompetent" in part because the person subscribes to a religious belief system which is not logical or based in fact. From the perspective of any one religion, the beliefs of other religious groups, including their beliefs as to historical facts, likely lack any demonstrable foundation in fact. Accordingly, while it can be speculated that Mr. Graves' condition might have been a factor in his deciding to join this religious group, to decide that he is rendered incompetent because he has done so is to decide that all who have joined this group, and any other religion whose beliefs we deem bizarre, are thereby rendered incompetent to stand trial. This is a patently absurd conclusion, and a conclusion with many constitutional implications as well.

The fact that Mr. Graves' religious group does not believe in the authority of the court is not unheard of. Many examples of persons who have refused to accede to the authority of courts recognized by the United States exist in history. To name one, many of those tried as Nazi war criminals at Nuremberg refused to accede to the authority of the court to try them, refused to cooperate with their counsel, and used every chance to speak given to them as an opportunity to denounce the court as an unlawful usurper of their own rightful authority to govern in Germany. Other examples have been captured foreign terrorists, who often refuse to cooperate, apologize, or accede to any authority which condemns their actions. None of these persons are thereby rendered "incompetent." Indeed, if repudiation of the authority of the court is grounds to render a person incompetent, and thereby not subject to being tried by the court, this, in a backhanded but very real fashion, would permit their assertion of lack of court authority to come true.

The peril of basing incompetency upon religious beliefs is further illustrated by consideration of the order of restoration which must be entered following a finding of incompetency. If Mr. Graves' religious beliefs and the behavior which result from them render him incompetent, must I then commit him to the custody of the Commissioner, with instructions that he be "cured" of these religious beliefs? Such an order would violate more principles of law than I care to try to consider.

For the foregoing reasons, I conclude that it is inappropriate to base a decision of competency upon a person's religious beliefs, unless it can be shown that the beliefs themselves were clearly adopted as a result of the

delusional thought process of the individual involved. This is not the case here. Otherwise, the incapacity, and the lack of cooperation with counsel and the court, must be shown to arise independently of the religious beliefs. In Mr. Graves' case, it is difficult to identify any behavior involving his cooperation with counsel or his dealings with the court which is not based largely, if not entirely, upon those beliefs. His many motions, his desire not to be represented by counsel, his refusal to cooperate with counsel, his dissatisfaction with counsel because they cannot and will not argue the "sovereign citizen" motions he believes he must file with the court in support of his beliefs, his lumping of the courts, defense counsel, the prosecution, and investigators as part of the unlawful invaders his group will not accept, are all part of his religious beliefs and appear to follow from and reflect these beliefs. These are what have caused the great bulk of his disagreements with his counsel. While his personality type may make him tend to delusions of his own invention, such as a belief that the government in general is conspiring against him, no one has identified any of these as predominating in the issues he has in assisting counsel or in representing himself.

I will enter an order consistent with the foregoing.